# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ERICA S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | Case No. 6:18-cv-01026 <br><br> **OPINION AND ORDER** |

Katherine L. Eitenmiller and Brent Wells, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Eugene, Oregon 97401. Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Martha A. Boden, Special Assistant United States Attorney, Office of General Counsel, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

Erica S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on March 3, 1968 and has a tenth-grade education. AR 59, 83–84. At the time of her alleged disability onset, Plaintiff was forty-six years old. AR 59. Before her alleged disability onset, she worked as an animal caretaker, home caregiver, dietary aide, and fast food worker. *Id.*

Plaintiff alleges disability due to fibromyalgia, left knee problems, rosacea and depression. AR 228, 237. On September 17, 2014, Plaintiff protectively filed an application for SSI, alleging a disability onset date of November 1, 2012. AR 50, 59. Plaintiff's claim was denied initially and upon reconsideration, and then Plaintiff requested a hearing. AR 149–61.

Plaintiff's hearing before Administrative Law Judge ("ALJ") Steven De Monbreum occurred on February 9, 2017. AR 73. On March 28, 2017, the ALJ found Plaintiff not disabled and not entitled to SSI under the Social Security Act. AR 60.

In April 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff now seeks review of the ALJ's decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At step one, the ALJ found Plaintiff had not participated in gainful activity since September 17, 2014. AR 52. At step two, the ALJ found the following severe medical impairments, which more than minimally affect Plaintiff's ability to work: rosacea, degenerative joint disease of the bilateral knees, status post left total knee replacement, osteoarthritis, affective disorder, obsessive-compulsive personality traits, post-traumatic stress disorder ("PTSD"), somatic symptom disorder, and agoraphobia. AR 53. The ALJ also noted that Plaintiff had been evaluated for other symptoms and complaints, some of which included: obesity and a history of fibromyalgia, carpal tunnel syndrome, left ulnar nerve entrapment, and right shoulder

PAGE 5 – OPINION AND ORDER

bursitis/tendonitis. *Id.* The ALJ determined that these conditions had not caused significant vocational limitations for at least twelve consecutive months and therefore did not constitute severe medical impairments. *Id.*

At step three, the ALJ found Plaintiff does not have any impairments or combination of impairments that meet the severity of one of the listed impairments in 20 C.R.F. § 404, Subpart P, Appendix 1. *Id.*

After considering the evidence from Plaintiff's hearing and medical record, the ALJ found that Plaintiff had the RFC as follows:

> The claimant can occasionally lift and/or carry, including upper pulling, 20 pounds, and frequently lift and/or carry, including upper pulling, 10 pounds. She can stand and/or walk, with normal breaks, for a total of about 6 hours in an 8-hour day, and can sit, with normal breaks, for a total of about 6 hours in an 8-hour day. The claimant can never push or pull with the left lower extremity and only occasionally push or pull with the right lower extremity, such as the operation of foot controls. She can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and should not kneel or crawl. The claimant should have no more than occasional exposure to temperature extremes, vibration, and no exposure to hazards such as dangerous machinery and unprotected heights. The claimant is limited to performing only simple, easy to learn, repetitive unskilled or with a DOT GED general reasoning level of 2 or less. She should not interact with the public and have only occasional interaction with coworkers and supervisors. She needs a static work environment with few changes in work routines and settings.

AR 55–56.

At step four, the ALJ considered Plaintiff's RFC, testimony from the vocational expert ("VE"), and the mental and physical demands of Plaintiff's past work as an animal caretaker, home caregiver, dietary aide, and fast food worker. AR 59. The ALJ concluded that Plaintiff's current RFC precluded her performance of her past relevant work. *Id.*

At step five, the ALJ considered Plaintiff's age, education, work experience, and the VE's testimony to determine that jobs exist in significant numbers in the national economy that Plaintiff could perform. *Id*. These jobs included work as a hand packager, garment sorter, and laundry sorter. AR 60. Accordingly, the ALJ found Plaintiff "not disabled." *Id.*

## DISCUSSION

Plaintiff contends that the ALJ erred in the following general aspects of his decision: (A) improperly evaluating the examining medical source opinions of Frank Lahman, PhD, and Scott Alvord, PsyD; and (B) improperly discounting Plaintiff's subjective symptom testimony.

### A. The ALJ's Evaluation of Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "[A] treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints; inconsistency with a claimant's daily activities; or that the opinion is brief, conclusory, and inadequately

supported by clinical findings. *Bray,* 554 F.3d at 1228; *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008).

   1. **Dr. Lahman**

   Plaintiff contends that the ALJ erred by discounting, without substantial evidence, the opinion of Dr. Lahman, who completed a psychological consultative examination of Plaintiff on December 18, 2014. AR 359. During his examination, Dr. Lahman performed a cognitive assessment of Plaintiff, and she achieved a score of twenty-nine out of thirty, indicating normal cognitive function. AR 360. At that examination, Plaintiff also mastered two learning trials and Dr. Lahman noted that she was fast and accurate on digits testing. *Id*. Based on his review of the available medical records, his clinic interview, and his mental status examination, Dr. Lahman assessed Plaintiff with "a history of PTSD, depression, anxiety, and panic attacks—all of which appear to be relatively well controlled at this time with medication and psychotherapy." AR 363. He noted, however, that "agoraphobia and some aspects of her PTSD (loud noises) remain problematic." *Id.*

   The ALJ gave "some weight" to Dr. Lahman's opinion but discounted his assertion that her agoraphobia and PTSD are "problematic" because he found the assessment broad, non-specific, and inconsistent with other evidence. AR 58. The ALJ noted that this portion of Dr. Lahman's opinion did not "offer a function-by-function assessment of the claimant as related to her impairments." *Id.*; *see Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999) (holding that a physician's report should demonstrate how a claimant's symptoms translate into specific functional deficits which preclude certain activities). More specifically, however, the ALJ found the portion of Dr. Lahman's opinion asserting that loud noises "remain problematic" for Plaintiff was inconsistent with her reported daily activities. AR 56. In particular, the ALJ noted that Plaintiff regularly accompanies her boyfriend to his autobody

shop, where "surely there are all sort of random loud noises."[2] *Id.*; *see also* AR 359, 363. That inconsistency is a specific and legitimate reason to discount Dr. Lahman's opinion. *See Morgan,* 169 F.3d at 600–02 (finding an inconsistency between a physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the physician's opinion).

Where the evidence could support more than one rationale interpretation, the Court is bound to uphold the ALJ's interpretation. *Batson,* 359 F.3d at 1196. Accordingly, the ALJ's finding that Dr. Lahman's opinion was inconsistent with Plaintiff's daily activities is affirmed as it provides a specific, legitimate reason to discount Dr. Lahman's opinion.

### 2. Dr. Alvord

Approximately two years after Dr. Lahman's examination, in January of 2017, Dr. Alvord completed a psychological consultative evaluation of Plaintiff. AR 458. Plaintiff reported debilitating anxiety that impacted her desire to leave her house and endorsed low grade depression. AR 460. Although Plaintiff was hard to keep on track, Dr. Alvord found that her speech and psychomotor movements were within normal limits, she was oriented in all spheres, her long-term and short-term memory were intact, and she had adequate insight into the nature of her condition. AR 461–62.

Dr. Alvord diagnosed Plaintiff with bipolar II disorder, chronic, moderate PTSD, obsessive compulsive personality traits, and somatic symptom disorder. AR 463. Dr. Alvord

---

[2]Plaintiff contends that there are no specific details in the record that about Plaintiff's boyfriend's workplace, and as such, Plaintiff's regular presence at the autobody shop cannot constitute substantial evidence to discount Dr. Lahman's opinion. ECF 21 at 7. However, the record shows that the autobody shop was located in a commercial area (*see* AR 324) where Plaintiff would tend to the landscaping, clean the bathroom and watch TV in the lobby. AR 362; *see also* AR 104 (TV commercials would trigger her feelings of anxiety). Given Plaintiff's voluntary presence at an autobody shop open to the public where engines, cars, and machinery would be operating sporadically, it was reasonable for the ALJ to discount any assertion that she could not work around people or noise.

opined that Plaintiff's symptoms were severe and found it "improbable . . . that she [would] function on any level in a consistent employment capacity." *Id*. He concluded that Plaintiff would likely decompensate rapidly if she were expected to function more consistently, and that she was socially avoidant and "fundamentally paralyzed" by anxiety. *Id*.

The ALJ discounted Dr. Alvord's opinion for several valid specific and legitimate reasons. First, the ALJ found Dr. Alvord's opinion vague and speculative. AR 58. Dr. Alvord's opinion failed to explain with any specificity "how and to what degree" Plaintiff would have difficulty performing work tasks. AR 58, 463; *see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that an ALJ may reject any doctor's opinion that is brief and conclusory).

Second, the degree of limitation found in Dr. Alvord's opinion was inconsistent with Plaintiff's performance on her mental status exam, which was largely unremarkable with the exception that she was tangential in her presentation. AR 461–62. An ALJ may properly reject a physician's opinion because of its internal inconsistencies. *See Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (rejecting doctor's opinion upon finding inconsistency between a chart note and ultimate opinion); *see also Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 692-93 (9th Cir. 2009) (noting that physician "repeatedly reported [the claimant] was unemployable while acknowledging he continued to work full time").

Finally, the ALJ found Dr. Alvord's opinion conflicted with the opinion of Dr. Lahman who had examined Plaintiff two years earlier and not found Plaintiff so limited. AR 57–58. Specifically, the ALJ determined that "[o]verall, when compared to the claimant's prior exam with Dr. Lahman in 2014, the results are objectively unchanged, if not actually *better*." AR 57 (emphasis added). The ALJ also noted that Plaintiff had not sought out mental healthcare in the intervening two years. *Id.* Ultimately, the ALJ concluded that Dr. Alvord's opinion conflicted

with that Dr. Lahman's mental status evaluation where Plaintiff "yielded arguably worse results," yet was not considered as mentally-impacted. *Id.* This Court finds these reasons specific, legitimate reasons to discount Dr. Alvord's opinion.

The ALJ also found that Dr. Alvord's opinion was based heavily on Plaintiff's subjective symptom complaints, AR 58, which the ALJ reasonably rejected, as further discussed below. "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This issue is complicated, however, in the context of psychiatric evaluations, which "may appear subjective," but "will always depend on part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id*. In *Buck*, the Ninth Circuit concluded that because a psychiatric evaluation involved "a clinical interview and a mental status evaluation" in addition to a review of the claimant's self-reports, the doctor's "partial reliance on [the claimant's] self-reported symptoms [was] . . . not a reason to reject his opinion." *Id*.

Here, Dr. Alvord conducted several objective tests. AR 461–62. Although Dr. Alvord's findings appear to be based primarily on Plaintiff's reporting, this reporting was obtained through clinical interview, and Dr. Alvord also conducted a mental status evaluation. AR 458–63. As such, although the ALJ properly discredited Plaintiff's own testimony, this was not a proper reason to disregard Dr. Alvord's report. Nonetheless, because the ALJ gave at least one

PAGE 11 – OPINION AND ORDER

specific and legitimate reason for discounting Dr. Alvord's opinion, the Court upholds the ALJ's decision to do so.

In sum, the ALJ acted in accordance with his responsibility to determine the credibility of medical opinion evidence and he gave specific, legitimate reasons for discrediting Dr. Alvord's medical opinion. *See Matney v. Sullivan,* 981 F.2d 1016, 1019–20 (9th Cir. 1992).

## B. Plaintiff's Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).[3]

The ALJ's decision to discredit a claimant's symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197 (9th Cir. 2004). The ALJ may not, however, discredit symptom testimony by finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In the present case, the ALJ found that Plaintiff's impairments could reasonably be expected to produce the symptoms that Plaintiff described. AR 55. However, the ALJ determined that Plaintiff's subjective symptom testimony was inconsistent with medical evidence and other evidence in the record. *Id*. Plaintiff contends that the ALJ failed to meet the legal and evidentiary standards to reject her symptom testimony. ECF 21 at 11.

The ALJ's decision provides several clear and convincing reasons to reject in part Plaintiff's symptom testimony. The ALJ noted that Plaintiff's symptom testimony was inconsistent with objective medical evidence and other evidence in the record. AR 58. Inconsistencies with the medical record, prior inconsistent statements, and inconsistency between a Plaintiff's alleged limitations and actual activities are all valid reasons to discount a Plaintiff's own statements about the severity of her own symptoms. *See Connett v. Barnhart*, 340 F.3d 871,

---

[3] Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id*. at *1-2. In this case, the ALJ's decision was issued March 28, 2017, and is governed by SSR16-3p.

874 (9th Cir. 2003) (discrepancies between testimony and medical records); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ may discredit a claimant's testimony when activities of daily living "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment").

At her hearing, Plaintiff testified that she stayed home much of the time due to frequent flares of skin rashes and a feeling of being overwhelmed when she was away from her home. AR 102–03, 359. She testified that was unable to go to noisy locations or places where there were a lot of people. AR 100. Due to pain, Plaintiff stated that she was only able to do a small amount of activity before she would need to lay down, testifying that she spent four to five hours laying down per eight-hour day. AR 92. Plaintiff also testified that she had difficulty understanding what was told to her, reciting how she was fired from working at a fast food place because she was required to work the till and she could not understand cashiering even when instructed repeatedly. AR 100.

The ALJ found these statements inconsistent with evidence that Plaintiff usually accompanied her boyfriend to work at his auto shop and helped him with the business by taking care of paperwork, cleaning the shop bathroom, and landscaping. AR 58, 325, 363. The ALJ further found Plaintiff capable of paying bills and handling funds, which is inconsistent with her testimony that she was unable to understand how to cashier at a former job. AR 56, 58.

The ALJ also identified objective medical evidence which was inconsistent with the extent of Plaintiff's symptom testimony. Where it is not the sole reason to discredit a Plaintiff's symptom allegations, inconsistency with the objective medical evidence can constitute a clear and convincing rationale to discredit a claimant's subject symptom allegations. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002). Although Plaintiff alleged that she had difficulty

standing and sitting due to knee pain, her knee responded well to surgery. AR 56–57, 447. Furthermore, Plaintiff was pleased enough with her knee recovery that she ended physical therapy treatment as she felt it was no longer needed. *Id.*

As to Plaintiff's mental state, per her examinations, her speech and psychomotor movements were within normal limits, she was oriented in all spheres, her short-term and long-term memory were intact, and she had adequate insight into the nature of her condition. AR 57, 360, 461–62. This objective medical evidence contradicts Plaintiff's claim of her difficulty in understanding directions. AR 100. Further, the ALJ noted that in mental status testing done by two different consultative examinations two years apart, Plaintiff had not shown any significant limitations in cognition, memory, or her ability to concentrate. AR 58.

The ALJ's finding that Plaintiff had been applying for service-type work suggests she believed she could work outside of the home. AR 58. Plaintiff contends that she only applied for these jobs because her probation officer required her to do so. AR 322; ECF 21 at 13. Because Plaintiff was in a position that she was required to apply for work outside of the home, it was error for the ALJ to rely on this evidence as a reason to discredit Plaintiff's subjective symptom testimony on this basis. The ALJ's evaluation of a claimant's subjective symptom testimony, however, may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff further contends that the ALJ erred by failing to consider her pain symptoms from fibromyalgia in her RFC. ECF 21 at 13. The ALJ found that fibromyalgia was a non-severe medically determinable impairment at step two because it did not cause significant vocational limitations for at least twelve consecutive months. AR 53. Plaintiff did not challenge the ALJ's step two finding in her opening brief, but instead contends that the ALJ failed to consider her

fibromyalgia pain symptoms when assessing her residual functional capacity. ECF 21 at 13. The ALJ, however, incorporated Plaintiff's fibromyalgia limitations into her RFC as it "reasonably accounts for the claimant's physical limitations by reducing her exertional level to light as well as placing limits on postural and environmental limitations."[4] AR 58. The RFC effectively precludes Plaintiff's ability to perform any of her past work, including jobs that she believed were too physical for her fibromyalgia pain. *See* AR 59, 86. Thus, Plaintiff's fibromyalgia pain symptoms were included in Plaintiff's RFC and not discounted by the ALJ.

In sum, the ALJ gave clear and convincing reasons for partially discounting Plaintiff's symptom testimony. He identified what testimony was not credible and what evidence undermined Plaintiff's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In light of these reasons, any other errors did not "negate the validity of the ALJ's ultimate conclusion" as to Plaintiff's testimony and were thus harmless. *Batson*, 359 F.3d at 1197. Plaintiff's briefing presents an alternate interpretation of the evidence in the record. But "[w]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591.

---

[4] To the extent Plaintiff argues that *Revels v. Berryhill* compels a different method for evaluating fibromyalgia pursuant to SSR 12-2p, this Court disagrees. In *Revels*, the Ninth Circuit held that it is not a clear and convincing reason to reject symptom testimony that conflicts with "objective findings" when fibromyalgia is an underlying impairment. *See* 874 F.3d 648, 666 (9th Cir. 2017); *but see Roberts v. Berryhill*, 734 F. App'x 489, 490–91 (9th Cir. 2018) (affirming rejection of claimant's fibromyalgia symptoms because they were inconsistent with objective medical evidence). *Revels* does not otherwise displace the ordinary two-step process for evaluating a claimant's testimony. *See Revels*, 874 F.3d at 655 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)).

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 9th day of March, 2020.

/s/ Karin J. Immergut<br>
Karin J. Immergut<br>
United States District Judge